**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABHISHEK BATWARA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INFOSYS LIMITED, SALIL PAREKH, and M. D. RANGANATH,<br><br>Defendants. | Case No:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Abhishek Batwara ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Infosys Limited ("Infosys" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Infosys securities from July 7, 2018 through October 20, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and subsequent damages took place in this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Infosys securities during the Class Period and was economically damaged thereby.

7. Defendant Infosys, with its subsidiaries, purports to provide consulting, technology, and outsourcing services in North America, Europe, India, and internationally. Infosys is incorporated in India and its principal executive offices are located at Electronics City, Hosur Road, Bengaluru, Karnataka, India 560 100. The Company's American Depository Shares ("ADSs") trade on the New York Stock Exchange ("NYSE") under the ticker symbol "INFY."

8. Defendant Salil Parekh ("Parekh") was the Company's Chief Executive Officer ("CEO") throughout the Class Period.

9. Defendant M. D. Ranganath ("Ranganath") was the Company's Chief Financial Officer throughout the Class Period.

10. Defendants Parekh and Ranganath are collectively referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

   (a) directly participated in the management of the Company;

   (b) was directly involved in the day-to-day operations of the Company at the highest levels;

   (c) was privy to confidential proprietary information concerning the Company and its business and operations;

   (d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

   (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

   (f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

12. Infosys is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Infosys under *respondeat superior* and agency principles.

14. Defendants Infosys and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS
## Materially False and Misleading Statements

15. On July 7, 2018, Infosys filed its annual report on Form 20-F for the fiscal year ended March 31, 2018 with the SEC (the "2018 20-F"). The 2018 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Parekh and Ranganath attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

16. The 2018 20-F stated that Infosys's Board "on January 12, 2018 adopted the revised Code of Conduct and Ethics *which is applicable to all officers, directors and employees* and is posted on our website at www.infosys.com. The Code of Conduct and Ethics is filed as an exhibit to this Annual Report on Form 20-F." The Code of Conduct and Ethics stated the following regarding records and disclosures, in pertinent part:

> The integrity of our financial transactions and records is critical to the operation of our business. Our shareholders' trust is based on their confidence in the accurate recording of our financial transactions. Additionally, as a listed company, we are bound by certain standards for accurate financial reporting and we are required to have appropriate internal controls and procedures. If you have responsibility for or

4

any involvement in financial reporting or accounting, you should have an appropriate understanding of, and you should seek in good faith to adhere to, relevant accounting and financial reporting principles, standards, laws, rules and regulations and the company's financial and accounting policies, controls and procedures. If you are a senior officer, you should seek to ensure that the internal controls and procedures in your business area are in place, understood and followed.

*     *     *

Infosys is committed to provide full, fair, accurate, timely and clear disclosures in reports and documents that we file with, or submit to our regulators and in our other public communications. To enable this, we must ensure that we comply with our disclosure controls and procedures, and our internal control over financial reporting.

DO NOT

• enter information in the Company's records that hides the true nature of any financial or non-financial transaction or result;

• establish any undisclosed or unrecorded fund, account, asset or liability for any improper purpose;

• enter into any transaction or agreement that could affect the accurate and timely recording of revenues or expenses.

17. The 2018 20-F stated the following regarding revenue recognition, in pertinent part:

We derive our revenues primarily from software development and related services and the licensing of software products. Arrangements with customers for software development and related services are mainly either on a fixed-price, fixed-timeframe or on a time-and-material basis.

We recognize revenue on time-and-material contracts as the related services are performed. Revenue from the end of the last billing to the Balance Sheet date is recognized as unbilled revenues. Revenue from fixed-price, fixed-timeframe contracts, where there is no uncertainty as to measurement or collectability of consideration, is recognized as per the percentage-of-completion method. When there is uncertainty as to measurement or ultimate collectability, revenue recognition is postponed until such uncertainty is resolved. Efforts or costs expended have been used to measure progress towards completion as there is a direct relationship between input and productivity. Provisions for estimated losses, if any, on uncompleted contracts are recorded in the period in which such losses become probable based on the current contract estimates. Costs and earnings in excess of billings have been classified as unbilled revenues while billings in excess of costs and earnings have been classified as unearned revenues. Deferred contract

costs are amortized over the term of the contract. Maintenance revenue is recognized ratably over the term of the underlying maintenance arrangement.

At the end of every reporting period, we evaluate each project for estimated revenue and estimated efforts or costs. Any revisions or updates to existing estimates are made wherever required by obtaining approvals from officers having the requisite authority. Management regularly reviews and evaluates the status of each contract in progress to estimate the profit or loss. As part of the review, detailed actual efforts or costs and a realistic estimate of efforts or costs to complete all phases of the project are compared with the details of the original estimate and the total contract price. We evaluate change orders according to their characteristics and the circumstances in which they occur. If such change orders are considered by the parties to be a normal element within the original scope of the contract, no change in the contract price is made. Otherwise, the adjustment to the contract price may be routinely negotiated. Contract revenue and costs are adjusted to reflect change orders approved by the client and us, regarding both scope and price. Changes are reflected in revenue recognition only after the change order has been approved by both parties. The same principle is also followed for escalation clauses.

18. The 2018 20-F further stated that the Company's internal control over financial reporting was effective:

Management assessed the effectiveness of our internal control over financial reporting as of March 31, 2018. In conducting its assessment of internal control over financial reporting, management based its evaluation on the Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). Based on the assessment, management has concluded that our internal control over financial reporting was effective as of March 31, 2018.

19. On June 19, 2019, Infosys filed its annual report on Form 20-F for the fiscal year ended March 31, 2019 with the SEC (the "2019 20-F"). The 2019 20-F contained signed SOX certifications by Defendants Parekh and Ranganath attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20. The 2019 20-F stated that Infosys' Board "on January 12, 2018 adopted the revised Code of Conduct and Ethics ***which is applicable to all officers, directors and employees*** and is posted on our website at www.infosys.com. The Code of Conduct and Ethics is filed as an exhibit to this

6

Annual Report on Form 20-F." The Code of Conduct and Ethics stated the following regarding records and disclosures, in pertinent part:

> The integrity of our financial transactions and records is critical to the operation of our business. Our shareholders' trust is based on their confidence in the accurate recording of our financial transactions. Additionally, as a listed company, we are bound by certain standards for accurate financial reporting and we are required to have appropriate internal controls and procedures. If you have responsibility for or any involvement in financial reporting or accounting, you should have an appropriate understanding of, and you should seek in good faith to adhere to, relevant accounting and financial reporting principles, standards, laws, rules and regulations and the company's financial and accounting policies, controls and procedures. If you are a senior officer, you should seek to ensure that the internal controls and procedures in your business area are in place, understood and followed.
>
> \* \* \*
>
> Infosys is committed to provide full, fair, accurate, timely and clear disclosures in reports and documents that we file with, or submit to our regulators and in our other public communications. To enable this, we must ensure that we comply with our disclosure controls and procedures, and our internal control over financial reporting.
>
> DO NOT
>
> • enter information in the Company's records that hides the true nature of any financial or non-financial transaction or result;
>
> • establish any undisclosed or unrecorded fund, account, asset or liability for any improper purpose;
>
> • enter into any transaction or agreement that could affect the accurate and timely recording of revenues or expenses.

21. The 2019 20-F stated the following regarding revenue recognition, in pertinent part:

> We derive revenues primarily from business IT services comprising of software development and related services, consulting and package implementation and from the licensing of software products and platforms across our core and digital offerings (together referred to as "software related services")

7

Revenue is recognized upon transfer of control of promised products or services to customers in an amount that reflects the consideration we expect to receive in exchange for those products or services.

Arrangements with customers for software related services are either on a fixed-price, fixed-timeframe or on a time-and-material basis.

Revenue on time-and-material contracts are recognized as the related services are performed and revenue from the end of the last invoicing to the reporting date is recognized as unbilled revenue. Revenue from fixed-price, fixed-timeframe contracts, where the performance obligations are satisfied over time and where there is no uncertainty as to measurement or collectability of consideration, is recognized as per the percentage-of-completion method. When there is uncertainty as to measurement or ultimate collectability, revenue recognition is postponed until such uncertainty is resolved. Efforts or costs expended have been used to measure progress towards completion as there is a direct relationship between input and productivity. Maintenance revenue is recognized ratably over the term of the underlying maintenance arrangement.

Revenues in excess of invoicing are classified as contract assets (which we refer as unbilled revenue) while invoicing in excess of revenues are classified as contract liabilities (which we refer to as unearned revenues).
 In arrangements for software development and related services and maintenance services, we applied the guidance in IFRS 15, Revenue from contract with customer, by applying the revenue recognition criteria for each distinct performance obligation. The arrangements with customers generally meet the criteria for considering software development and related services as distinct performance obligations. For allocating the transaction price, we have measured the revenue in respect of each performance obligation of a contract at its relative standalone selling price. The price that is regularly charged for an item when sold separately is the best evidence of its standalone selling price. In cases where we are unable to determine the standalone selling price, we used the expected cost plus margin approach in estimating the standalone selling price. For software development and related services, the performance obligations are satisfied as and when the services are rendered since the customer generally obtains control of the work as it progresses.

\* \* \*

Deferred contract costs are incremental costs of obtaining a contract which are recognised as assets and amortized over the term of the contract.
Contract modifications are accounted for when additions, deletions or changes are approved either to the contract scope or contract price. The accounting for modifications of contracts involves assessing whether the services added to an existing contract are distinct and whether the pricing is at the standalone selling price. Services added that are not distinct are accounted for on a cumulative catch up basis, while those that are distinct are accounted for prospectively, either as a

separate contract, if the additional services are priced at the standalone selling price, or as a termination of the existing contract and creation of a new contract if not priced at the standalone selling price.

22. The 2019 20-F further stated that the Company's internal control over financial reporting was effective:

> Management assessed the effectiveness of our internal control over financial reporting as of March 31, 2019. In conducting its assessment of internal control over financial reporting, management based its evaluation on the Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). Based on the assessment, management has concluded that our internal control over financial reporting was effective as of March 31, 2019.

23. The statements contained in ¶¶15-22 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company improperly recognized revenues to inflate short-term profits; (2) Defendant Parekh bypassed reviews and approvals for large deals to avoid accounting scrutiny; (3) management pressured the Company's finance team to hide information from auditors and the Company's Board of Directors; and (4) as a result of the aforementioned misconduct, Defendants' statements about Infosys's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH BEGINS TO EMERGE

24. On October 21, 2019, before the market opened, the *Economic Times* reported that an anonymous group calling itself "ethical employees" sent a whistleblower complaint to the

9

Company's audit committee and the SEC. The whistleblower complaint stated that Defendant Parekh was using "unethical practices" to boost short-term revenues and profits.

25. The whistleblower complaint stated, in pertinent part:

Respected Sir / Madam,

Disturbing unethical practices

We have high respect for all of you and bring to your notice the unethical practices of CEO in recent quarters. Same measures are taken up in current quarter also to boost short-term revenue and profits. We are Infosys employees and we have emails and voice recordings on these matters. We hope the board will conduct immediate investigation and take action.

*In last quarter, we were asked not to fully recognise costs, like visa costs, to improve profits. We have voice recordings of these conversations. When auditor opposed, the issue was postponed. This quarter, there is a lot of pressure to not recognise reversals of $50 million of upfront payment in FDR contact, which is against accounting practice.* As this will reduce profits for the quarter and negative for stock price, they are putting pressure not to take the charge.

Critical information is hidden from the auditors and board.

*In large contracts like Verizon, Intel and JVs in Japan, ABN Amro acqusition, revenue recognition matters are forced which are not as per accounting standards*. We have emails and voice recordings and we will share when investors ask us. We are asked not to share large deal information with auditors.

*Large deals approvals have irregularities. The CEO is bypassing reviews and approvals and instructing sales not to send mails for approval. He directs them to make wrong assumptions to show margins. CFO is compliant and he prevents us from showing in board presentations large deal issues.*

The CEO told us, "no one in the board understands these things. They are happy as long as share price is up. These two Madrasis (Sundaram and Prahalad) and Divya (Kiran) make silly points. You just nod and ignore them." We have voice recordings of this.

Several billion dollars deals of last few quarters have nil margin. Please ask auditors to check deal proposals, undisclosed upfront commitments made and revenue recognition. All information is not shared with auditors.

>The CEO spends two-and-half days in a week in the city and rest in Mumbai. All his travel expenses are paid by the company, for these weekly personal trips. He is greencard holder and avoids deduction of taxes during his US travel which is non-compliance. Please check and details will be provided.
>
>***In board meetings, we are told not to present data on large deals and important financial measures as it will get board attention. The CEO and the CFO are asking us to show more profits in treasury by taking up risks and make changes to policies.*** This will provide short-term profits. ***They ask us not to make key disclosures in 20 F and annual report and to share only good and incomplete information with investors and analysts***. This is regulatory issue.
>
>We have mails and voice records and will share during investigation ***Whoever disagrees is sidelined and many of them leave.*** In large deals finance team, important employees are left due to pressure to make deals look good.
>
>We know you will take action and we await to provide details and evidence to investigators.

(Emphasis added.)

26. On this news, Infosys ADSs fell $1.28 per ADS, or over 12%, to close at $9.29 per ADS on October 21, 2019, damaging investors.

27. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired Infosys securities publicly traded on the NYSE during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Infosys, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

11

29. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Infosys securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

30. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

32. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business of Infosys;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused Infosys to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of Infosys's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

34. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Infosys ADSs met the requirements for listing, and were listed and actively traded on the NYSE, a highly efficient and automated market;

- As a public issuer, Infosys filed periodic public reports with the SEC;

- Infosys regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Infosys was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

35. Based on the foregoing, the market for Infosys securities promptly digested current information regarding Infosys from all publicly available sources and reflected such information in the prices of the ADSs, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

36. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

39. During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

14

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Infosys securities during the Class Period.

41. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Infosys were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Infosys, their control over, and/or receipt and/or modification of Infosys's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Infosys, participated in the fraudulent scheme alleged herein.

42. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Infosys personnel to members of the investing public, including Plaintiff and the Class.

43. As a result of the foregoing, the market price of Infosys securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff

and the other members of the Class relied on the statements described above and/or the integrity of the market price of Infosys securities during the Class Period in purchasing Infosys securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

44. Had Plaintiff and the other members of the Class been aware that the market price of Infosys securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Infosys securities at the artificially inflated prices that they did, or at all.

45. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

46. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Infosys securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

47. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48. During the Class Period, the Individual Defendants participated in the operation and management of Infosys, and conducted and participated, directly and indirectly, in the conduct of Infosys's business affairs. Because of their senior positions, they knew the adverse non-public information about Infosys's misstatement of revenue and profit and false financial statements.

49. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Infosys's financial condition and results of operations, and to correct promptly any public statements issued by Infosys which had become materially false or misleading.

50. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Infosys's disseminated in the marketplace during the Class Period concerning Infosys's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Infosys to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Infosys within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Infosys securities.

51. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Infosys.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a) declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b) awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c) awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 23, 2019     Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com

*Counsel for Plaintiff*